UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN BERGERSON, and MYRON COHN as TRUSTEE of MYRON COHN REVOCABLE TRUST, <br><br> *Plaintiffs,* <br><br> v. <br><br> THE MARINA II CORPORATION, ALLEN ROSENBERG II, LAWRENCE BUELL, ROBERT K. BUSSEL, GORDON D. BYERS and ZACHARY T. ROSENBERG, <br><br> *Defendants.* | CAUSE NO. 25-CV-1300 |

## PLAINTIFFS' COMPLAINT

Steven Bergerson and Myron Cohn, as Trustee of Myron Cohn Revocable Trust ("Plaintiffs") file this Complaint against The Marina II Corporation ("General Partner") and Allen Rosenberg II ("Rosenberg"), Lawrence Buell ("Buell"), Robert K. Bussel ("Bussel"), Gordon D. Byers ("Byers") Zachary T. Rosenberg ("ZRosenberg") (collectively, Rosenberg, Buell, Bussel, Byers and ZRosenberg are herein referred to as the "Individual Defendants" and the Individual Defendants and the General Partner collectively as "Defendants").

## DESCRIPTION OF THE ACTION

1. Plaintiffs are limited partners (the "Limited Partners") in The Marina Limited Partnership, an Indiana limited partnership. Plaintiffs were forced to bring this action because the General Partner and the Individual Defendants illegally

purported to dissolve the Partnership and liquidate its assets by distributing some of the Partnership's cash to the Limited Partners and distributing to the General Partner the remaining cash (the amount of which is undisclosed) and all of the Partnership's non-cash assets worth tens of millions of dollars. The cash which the General Partner allocated and distributed to the Limited Partners was a small fraction of what they were entitled to receive and by taking both an undisclosed amount of cash and all of the non-cash assets of the Partnership for itself, the General Partner unjustly enriched itself at the expense of the Limited Partners.

    2.    The General Partner had no right (a) to dissolve the Partnership or (b) to treat the Limited Partners in any manner differently from the General Partner. The value of the assets which were distributed to the General Partner vastly exceeded what it was entitled to receive under the partnership agreement of the Partnership ("Partnership Agreement"). The General Partner improperly and illegally engaged in self-dealing to enrich itself and its owner at the expense of the Limited Partners including the Plaintiffs, and breached their fiduciary duties to the Limited Partners by distributing to the General Partner assets worth tens of millions of dollars instead of distributing such assets to the partners of the Partnership fairly and properly in accordance with their respective economic interests in the Partnership. As a result of such illegal and improper acts, the General Partner and Individual Defendants severely damaged the Limited Partners.

## PARTIES

3. Plaintiffs are individuals suing in their capacities as Limited Partners.

4. Steven Bergerson is a citizen of New York.

5. Myron Cohn is a citizen of Florida. He is the Trustee for the Myron Cohn Revocable Trust, 288 Beach Drive NE Apt. 6B, St. Petersburg, FL 33701.

6. The Defendant, The Marina II Corporation, is an Indiana corporation and the General Partner of the Partnership. It may be served with process through its registered agent Zachary Rosenberg at 11695 Fall Creek Road, Indianapolis, IN 46256.

7. Rosenberg is an individual and the Chairman of the Board and CEO of the General Partner. He is a citizen of Indiana. He may be served with process at 100 Clarendon Drive, Noblesville, IN 46060.

8. Bussell is an individual and a member of the Board of Directors of the General Partner and Director and Vice President of Marketing. He is a citizen of Indiana. He may be served with process at 5722 Prelude Lane, Carmel, IN 46033.

9. ZRosenberg is an individual and a member of the Board of Directors and Director and CFO and Vice President of the General Partner. He is a citizen of Indiana. He may be served with process at 11695 Fall Creek Road, Indianapolis, IN 46256.

10. Buell is an individual and a member of the Board of Directors of the General Partner. He is a citizen of Indiana. He may be served with process at 2502 Silver Lande Drive, Indianapolis, IN 46203.

11. Byers is an individual and a member of the Board of Directors of the General Partner. He is a citizen of Indiana. He may be served with process at 268 South 10th Street, Suite 300, Noblesville, IN 46060 or 20999 Hague Road, Noblesville, IN 46060.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a). This Court has personal jurisdiction over Defendants because the General Partner is an Indiana corporation with its principal place of business located in Marion County, Indiana, and each of the Individual Defendants is a resident of Indiana. None of the Plaintiffs are citizens of Indiana.

13. This Court has subject matter jurisdiction over this action because of the diversity among the Plaintiffs and the Defendants and the amount in controversy of One Hundred Million Dollars ($100,000,000) exceeds the minimum jurisdictional limits of this Court. 28 U.S.C. § 1332.

14. Venue is proper in this Court because the Partnership has its principal place of business within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this district. 28 U.S.C. § 1391.

## FACTS

15. The Partnership was formed in Indiana on October 7, 1986.

16. The Partnership Agreement was later amended on September 7, 2001 (as amended, the "Partnership Agreement"). The Partnership Agreement is attached hereto as Exhibit A and incorporated herein by reference.

17. The Partnership generally engages in the business of owning and operating a marina on property owned by the Partnership, leasing retail facilities owned by it, developing, marketing, and selling homesites. In addition, the Partnership is the general partner of Marina I L.P. through which it acquires real property to create additional homesites for development by the Partnership and sells such homesites. In 2023, Marina I L.P. distributed $2,938,703 cash to the Partnership and $4,496,523 in 2024. At the end of 2024, the members' equity in Marina 1 was $7,679,000.

18. The business – and thus the Partnership – has been consistently and considerably profitable for decades and is exceedingly profitable currently. Its net earnings in 2022 were $7,835,158; in 2023 $4,826,304; and in 2024 $5,136,110 according to the audited financial statements of the Partnership. In 2024, the year the General Partner purportedly dissolved the Partnership, it earned $309,806 more than in the prior year. The audited Financial Statements do not disclose the amount of cash or value of the assets distributed to the General Partner only the cash which was distributed to Limited Partners.

19. On information and belief, the Partnership has had discussions for the disposition or sale of certain land or rights owned by it for many millions of dollars which it has kept secret and not disclosed to the Limited Partners and which it intends to keep to itself and not share with the Limited Partners in breach of their fiduciary duty to the Limited Partners and the explicit provisions of the Partnership Agreement.

20. Rosenberg succeeded his father as the CEO of the General Partner.

21. By Rosenberg's letter dated December 20, 2024 (copy attached as Exhibit B and incorporated herein by reference) he notified the Limited Partners that the General Partner with the aid and approval of the Individual Defendants decided to dissolve the Partnership as of December 31, 2024. This decision was made without notice to or the approval of the Limited Partners.

22. The General Partner owned 864 Partnership Units, and the Limited Partners of the Partnership owned 1,322, *i.e.*, the Limited Partners owned 60.52% of the interests in the Partnership and the General Partner owned 39.48% of the interests in the Partnership. As reflected in the Partnership Agreement the interests of the General Partner and of the Limited Partners are identical and entitled to identical treatment which was confirmed on the first page of the Partnership's 2023 Annual Report: "The economic interests in the Partnership represented by General Partner Units and Limited Partner Units are identical."

23. Notwithstanding that the General Partner Units and the Limited Partner Units are identical, the General Partner decided to distribute and distributed with the December 20th letter $12,300/Partnership Unit in cash to the Limited Partners and the remaining cash of the Partnership (in an undisclosed amount) and all of the Partnership's remaining assets were distributed to the General Partner.

24. The assets of the Partnership included, without limitation, those of the Marina and its operations which had revenues in 2024 of $9,231,951 and expenses

of $5,025,039, i.e. a net profit of $4,206,912, the property on which the marina operates, retail property, homestead sites and equipment and personal property, additional land, its interest in Marina I Partnership, goodwill and other intangibles. including, without limitation, the goodwill of the Marina.

25.     The result of the General Partner taking for itself and its principal all of the assets of the Partnership other than the cash distributed to the Limited Partners of the Partnership was that the General Partner received not just 39.48% of the value of the assets of the Partnership, but the vast majority of the value of what the Partnership owned.

26.     The General Partner arrogated itself exceedingly valuable assets and denied the Limited Partners their fair share of such assets. This self-dealing was done without notice to or approval of the Limited Partners of the Partnership, and with the approval of the Individual Defendants who constituted the Board of Directors of the General Partner and acted together to deprive the Limited Partners of their fair share of the value of the Partnership's assets which were worth as much as $100,000,000 (excluding the cash in the Partnership) or over $45,000 per Unit, and in addition there was in excess of $16,000,000 of cash (the exact amount was not disclosed).

27.     The General Partner has refused to disclose the basis on which it determined what the Limited Partners received despite a demand by Plaintiffs to do so.

28.     The General Partner discounted what the Limited Partners received for lack of control and marketability as if their Limited Partnership Units were being sold to a third party. Such discounts are improper if the Partnership were dissolved and wound up and its assets sold or distributed.

## PARTNERSHIP AGREEMENT

29.     Section 15 of the Partnership Agreement (the "Partnership Agreement") governs the dissolution of the Partnership.

30.     Section 15.1(C) of the Partnership Agreement authorizes dissolution after the sale or other disposition of all or substantially all of the assets of the Partnership that causes the Partnership to cease being in active business, coupled with the distribution of all cash and other property (except for tax reserves). The assets of the Partnership were not sold or disposed of, and its business never ceased.

31.     The Marina and retail operations are ongoing and continue to be profitable as they were in the past and there remains homesites for sale and additional developable land. In other words, the Partnership remains active and valuable. Ongoing commercial viability and recent planned retail conversions underscore continued profitability.

32.     The Marina – and thus the Partnership – remains profitable, generating millions of dollars per year in revenue. There simply was no cessation of business that would warrant dissolution under Section 15.1(C).

33. The General Partner cannot rely on Section 15.1(C) to excuse its actions.

34. Section 15.1(D) of the Partnership Agreement requires approval by an affirmative vote pursuant to Section 7.8 of a Majority in Interest of the Limited Partners to effect dissolution. Such approval was not given, nor could it have been since the Limited Partners were never given notice of the proposed action.

35. Section 7.8 was amended in 2002 to confirm that the Limited Partners have the right to vote on dissolution under Section 15.1(D) and the act of dissolution of the Partnership "may be taken by the General Partner only with the affirmative vote of a Majority in Interest[.]"

36. "Majority in Interest" is defined as the "Limited Partners of record holding more than 50% of the Limited Partner Units."

37. The General Partner's unilateral dissolution, therefore, was unauthorized and breached the Partnership Agreement, among other things.

38. The General Partner engaged in a related-party transaction by improperly declaring dissolution and distributing all productive assets to itself while allocating only cash to the Limited Partners.

39. Section 5.8 of the Partnership Agreement requires that after full disclosure of all material facts to the Limited Partners of the Partnership any self-dealing or related party transaction must be approved by a Majority in Interest of the Limited Partners. There was no disclosure of any kind to the Limited Partners

and the Limited Partners did not approve of the General Partner taking to itself the assets of the Partnership other than the cash distributed to the Limited Partners.

40. Sections 11.1 and 11.2 of the Partnership Agreement do not grant the General Partner unlimited discretion to determine the distributions due to the Limited Partners. If they did, then the Limited Partner Units could be worth a million dollars and the General Partner could distribute $100 to each Limited Partner. That would be preposterous and against Indiana law. However, in effect that is exactly what the Defendants did here.

41. The General Partner owes the Limited Partners fiduciary duties. The General Partner breached those fiduciary duties in making its distribution decisions. It enriched itself at the expense of the Limited Partners. The Individual Defendants who controlled the General Partner also owed a fiduciary duty to the Limited Partners. In approving and enabling the abrogation of the rights of the Limited Partners, each of the Individual Defendants is liable for the damages suffered by the Limited Partners.

42. The Limited Partners never approved the dissolution, nor were they provided meaningful opportunity to review or object to the valuation methodology, the asset distribution, or the basis for liquidation. The General Partner breached the Partnership Agreement. Their damages were compounded by the improper valuation of their interests, resulting from the breach of fiduciary duties, severely damaging the Limited Partners.

## COUNT ONE
## BREACH OF CONTRACT

43. Paragraphs 1 through 42 are hereby incorporated by reference.

44. The Partnership Agreement created a valid and enforceable contract between Limited Partners and the General Partner.

45. The Limited Partners performed their obligations under the Partnership Agreement.

46. The General Partner and the Individual Defendants breached their obligations under the Partnership unilaterally by dissolving the Partnership and engaging in a related-party transaction without obtaining required approval from Limited Partners.

47. The Limited Partners seek damages and equitable relief to unwind or redress this improper dissolution.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY

48. Paragraphs 1 through 47 are hereby incorporated by reference.

49. Defendants owed fiduciary duties to the Limited Partners. Defendants in authorizing the distribution and taking (or keeping) all productive assets to itself at discounted values while allocating only cash to Limited Partners constitutes self-dealing and a breach of those duties.

50. That breach damaged the Limited Partners as a result and the Limited Partners are entitled to damages or equitable relief.

## COUNT THREE
## REQUEST FOR ACCOUNTING AND INJUNCTIVE RELIEF

51. Paragraphs 1 through 50 are hereby incorporated by reference.

52. The Limited Partners request a full accounting of Partnership assets, liabilities, and valuation procedures.

53. The Limited Partners further request injunctive relief preventing any liquidation or dissipation of assets pending resolution of this matter and the retention by the Partnership of the profits of the Partnership and an injunction against distribution or payment of the profits and avails of the Partnership assets being distributed by the General Partner to its owners.

## JURY DEMAND

54. Pursuant to Federal Rule of Civil Procedure 38, the Limited Partners hereby demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court render judgment against Defendants, as follows:

a. Injunctive relief;

b. A full accounting;

c. Judgment in Plaintiffs' favor and against Defendants on all causes of action alleged herein;

d. Damages in an amount to be determined at trial;

e. Costs of suit incurred herein;

f. Attorneys' fees; and,

      g.  Such other and further relief as the Court may deem to be just and proper.

June 30, 2025

Respectfully submitted,

*/s/Alastair J. Warr*
Alastair J. Warr
FisherBroyles, LLP
203 N. LaSalle Street, #2100
Chicago, IL 60601
Tel.: 317.407.5260
Email: Alastair.warr@fisherbroyles.com

(pro hac vice forthcoming)
William J. Akins
State Bar No. 24011972
william.akins@pierferd.com
Pierson Ferdinand
*MAIL*: 10501 Crow Wing Cove
Austin, Texas 78730
*OFFICE*: 2021 Guadalupe Street
Suite 260
Austin, Texas 78705